[No. 11959.  *En Banc.*  June 23, 1915.]

C. A. TAYLOR, *Respondent*, v. B. A. PARISH, *Appellant.*[1]

BILLS AND NOTES—ORDERS ON FUND—QUALIFIED ACCEPTANCE—CONSTRUCTION—EVIDENCE—TO EXPLAIN WRITING—AMBIGUITY. An order by loggers to pay the sum of $1 per M. up to the amount and as the sum may become due them on logs as per contract with the defendant, which was accepted by the defendant "as the amount is due" to the loggers, is ambiguous as limited by the acceptance, and admits of parol evidence to the effect that all the parties knew that the loggers were without funds, that advances to them by the defendant had been and were necessary, that there was no profit in the logging operations, and that nothing became due to the loggers, although subsequent to the acceptance enough logs were put in at $1 per M. to pay plaintiff's claim had no further advance been made; and there could be no liability on the acceptance, since it is clear that defendant did not intend to guarantee profits to the loggers, and the parties understood that the logging contract was to carry itself.

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered January 13, 1914, upon findings in favor of the plaintiff, in an action upon an accepted order, tried to the court. Reversed.

*Imus & Gore,* for appellant.

*Loyal H. McCarthy* and *Magill, McKenney & Brush,* for respondent.

PER CURIAM.—This cause was originally set for hearing during the October term, 1914, at which time counsel for appellant appeared. Counsel for respondent failed to appear.

[1]Reported in 149 Pac. 635.

An opinion was filed January 8, 1915. Subsequently a showing was made by counsel for respondent as to his failure to receive notice of the hearing because of an imperfect copy of the docket received by him. Thereupon the opinion was withdrawn and the cause again assigned for hearing during the May term, 1915. The majority of the court now hold that a correct conclusion was reached on the first hearing, and the opinion then filed is now adopted as the opinion of the court.

This is an action to recover upon an accepted order. The suit is prosecuted by the assignee. There was a judgment for the plaintiff as prayed for. The defendant has appealed.

The facts are these: In the fall of 1910, the firm of F. B. Mallory & Company, as the selling agent for Macomber & Whyte Rope Company, sold to the firm of Fowler & Quigley a quantity of wire rope for use in logging operations which they were then carrying on for the appellant. Mr. Mallory testified that the invoices were not paid when due; that Fowler & Quigley gave two promissory notes in settlement of the account, and that, just before the first note was due, Mr. Fowler advised that he would not be able to pay it, and asked if they would be satisfied to take an order on the appellant; that Fowler showed him a contract between the firm of Fowler & Quigley and the appellant, under which they were operating; that, in pursuance of the conversation, Fowler & Quigley gave him an order upon the appellant Parish as follows:

"Portland, Ore., May 11, '11.

"To Mr. B. A. Parish: Please pay to F. B. Mallory & Co. the sum of $1.00 per M. Scale up to amt due them (one and no-100 dollars) as the sum may become due me on logs as per my contract with you. The above is to apply on logs that I may put in in excess of the 1,300,000 feet logged previous to this date. Fowler & Quigley, by Wallace Fowler."

that he presented the order to appellant, who indorsed his acceptance upon it in the following language: "O. K. as the amount is due Fowler & Quigley. B. A. Parish."

The contract between Fowler & Quigley and the appellant bears date the 16th of November, 1910. By the terms of the contract, it was agreed that Fowler & Quigley should proceed without delay to build logging roads, arrange all necessary equipment, and log into floating water in the Coweeman river, within a period of eight months, barring unavoidable accident, all the timber standing upon certain described land, for four dollars per thousand feet "log scale at the Coweeman Driving & Rafting Co.'s boom." It was further agreed that Fowler & Quigley should employ experienced fallers, buckers, and woodsmen to conduct the logging operations along economic lines with minimum breakage; that they should cut the timber in such lengths as would saw out and market to the best advantage as the appellant should designate. It was further agreed "that $3.75 of the above contract price is to be paid to the party of the second part [Fowler & Quigley] when logs are rafted and scaled by Coweeman Rafting and Driving Company." It was further agreed that twenty-five cents of the contract price should be retained by the appellant until the completion of the contract as a forfeit and guaranty of the fulfillment and faithful performance of the contract by Fowler & Quigley, and that their failure "to comply herewith is hereby made a forfeiture of the remaining twenty-five cents, and the further payment of the same by the party of the first part is hereby canceled." The contract contains a further clause for liquidated damages in case Fowler & Quigley should quit work before the contract was completed, and provides that "time and the exact performance of this contract be the essence thereof."

Both parties treated the acceptance as ambiguous, and offered parol testimony as to the actual agreement between Mallory & Company and the appellant at the time the latter indorsed his acceptance upon the order. Mr. Mallory testified in substance that, when he presented the order to the appellant, he told him that Mr. Fowler had shown him the contract upon which they were operating, and that he asked

the appellant if he would accept the order "on that basis, and he said he would;" that the appellant said that Fowler & Quigley had then put in about 1,300,000 feet of logs and, as the money came due in excess of that amount, he would pay the one dollar per thousand. He further said that the appellant gave him "to understand the one dollar a thousand would be paid as the logs were put in" in excess of the 1,300,000 feet, and that there was nothing said about any other conditions. He further testified that the appellant told him that he had made some advances to Fowler & Quigley which were covered by the 1,300,000 feet of logs.

The appellant was asked, "Did you tell him (Mallory) you had to make advances?" and answered: "I did, as his testimony showed this morning. He realized there were advances made. He knew it and knew there was nothing due them at the time on the contract." He said that Mr. Mallory did not discuss the details of the contract with him; that the contract was not discussed between them "or even mentioned;" that he told Mr. Fowler if money became due Fowler & Quigley on the contract, instead of paying it to them, "I would pay it to him," and that he accepted the O. K. on that condition; "otherwise I would not accept that at all. I told him I would not. There wasn't anything due them and I did not know when there would be anything due owing to making advances." It was stipulated that sufficient logs were scaled and put in the boom in excess of the 1,300,000 feet at one dollar a thousand to pay the respondent's claim. The court found all the issues in favor of the respondent.

If the order as limited by the acceptance is ambiguous, which we think it is, the burden of proof was upon the respondent to prove a right to recover. It is clear that Mallory & Company, at the time they accepted the order, knew that Fowler & Quigley were without funds. They knew that they had delivered 1,300,000 feet of logs which had been paid for in advances. They knew that Fowler & Quigley had not been able to pay for the equipment which they had

bought of them to use in logging. They knew that they were without funds with which to conduct the logging operations. This was known by all the parties to the contract. It must have been within the contemplation of the parties that the logging contract should carry itself, and that the appellant was not undertaking to guarantee that a profit would result from it. This appears from an inspection of the order and the acceptance. It is clear that Fowler & Quigley undertook to appropriate one dollar per thousand feet upon all logs thereafter delivered into the boom. The appellant, apparently realizing that there might not be such profit, limited his acceptance. The testimony shows conclusively that there was no profit at all in the logging operations. Indeed, the appellant paid for supplies and labor, direct to the parties furnishing the supplies and the labor, several thousand dollars in excess of the contract price. If he is held liable in this action he will sustain an additional loss to the extent of the recovery. It is true that the logging contract provides that $3.75 per thousand feet shall be paid to Fowler & Quigley when the logs "are rafted and scaled by the Coweeman Rafting and Driving Company," and it was stipulated that sufficient logs have been rafted and scaled in excess of the 1,300,000 feet to pay the respondent's claim. However, nothing ever became due Fowler & Quigley for the reason, as we have said, that the contract price was more than consumed in supplies and labor which the appellant paid direct to the parties who furnished these commodities.

By placing ourselves in the situation of the drawees and the acceptor at the time of the acceptance, with the light which they had on the matter, it becomes clear that the appellant merely undertook to pay the drawees any sum due Fowler & Quigley in excess of the actual expenses of the logging operations to the extent of the claim which the drawees represented. These operations resulted in a deficit instead of a profit and there can be no recovery. *Lawrence*

*v. Phipps*, 67 Hun 61, 22 N. Y. Supp. 16; *Haseltine v. Dun-bar*, 62 Wis. 162, 22 N. W. 165.

The judgment is reversed, with directions to dismiss the action.